511 P.2d 183

**HARDWARE MUTUAL CASUALTY COMPANY and Automotive Sales Company, Petitioners,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Joseph L. Zimlich, Respondent Employee.**

**No. 1 CA–IC 767.**

Court of Appeals of Arizona,
Division 1,
Department B.
June 26, 1973.

Rehearing Denied Aug. 1, 1973.

Review Denied Sept. 25, 1973.

Strong & Pugh, by William K. Strong, Phoenix, for petitioners.

William C. Wahl, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent Industrial Commission.

Johnson, Sundberg & Crossman, by Chris T. Johnson, Phoenix, for respondent employee.

JACOBSON, Chief Judge, Division 1.

In this review of an award of the Industrial Commission, the petitioning insurance carrier and employer question the sufficiency of the evidence to support a reopening of the claimant's prior award.

On July 16, 1970, the claimant, Joseph L. Zimlich, suffered an industrial injury when rust particles fell into his right eye while employed as an automotive mechanic by petitioner, Automotive Sales Company. Mr. Zimlich was treated by several doctors, including Dr. Richard A. Thompson, a neurologist, who diagnosed Mr. Zimlich's eye condition as optic neuritis (inflammation of the optic nerve) caused by the rust particles falling into the right eye. This condition of optic neuritis subsequently affected both eyes, resulting on August 14, 1970, of an acuity of 20/50 in the right eye and 20/200 in the left eye. This condition improved until, on September 11, 1970, the acuity reading was 20/30 right and 20/30 left. On September 24, 1970, the petitioner, Hardware Mutual Casualty Company, the employer's insurance carrier, issued its Notice of Claim Status accepting Mr. Zimlich's claim, but terminating benefits as of September 11, 1970.

Apparently Mr. Zimlich's eye condition remained fairly stable until the latter part of November, 1970, when his eyesight began to worsen.

An examination by Dr. Donald W. Longfellow, an opthalmologist on April 8, 1971, revealed an acuity reading of 20/200 in the right eye and 20/100 in the left. These readings are sufficient to render Mr. Zimlich legally blind and he is unable to improve his vision by glasses. Dr. Longfellow diagnosed Mr. Zimlich's condition as optic neuritis.

On April 30, 1971, Mr. Zimlich filed a petition to reopen his previous claim, contending he is now suffering from a new, additional or previously undiscovered condition attributable to the initial industrial injury of July 16, 1970. The petition to reopen was denied by a Notice of Claim Status followed by a timely request for hearing which was held on September 7, 1971. The hearing officer granted the petition to reopen which was subsequently affirmed by the Commission and the matter was then brought to this court for review by a writ of certiorari.

As previously indicated, the petitioners contend there is no evidence to support the granting of the petition to reopen. At the hearing Dr. Thompson, Dr. Longfellow and Mr. Zimlich testified. Dr. Thompson's testimony was principally that Mr. Zimlich's condition of optic neuritis in August of 1970 was causally related to the rust particles in his right eye, but that he had not examined Mr. Zimlich since November, 1970, and was not familiar with his condition since that time. Dr. Thompson did testify, however, that in his opinion optic neuritis is a permanent condition. Dr. Longfellow, who examined Mr. Zimlich at Dr. Thompson's request, testified that Mr. Zimlich is in fact suffering from optic neuritis but that in his opinion this condition was not caused by the rust particles falling into his eye and therefore he was unable to causally relate his condition to the industrial episode of July 16, 1970. The claimant testified that he had no eye problems until July 1970 following the rust particles falling into his eye and that while his condition improved in September and October 1970, his eyes became gradually worse until he is now legally blind.

It is petitioner's contention that if the Notice of Claim Status issued in Septem-

ber 1970 precludes their challenging the causal connection between Mr. Zimlich's optic neuritis in September 1970 and the industrial injury of rust particles falling into his eye in July 1970, this "episode" of optic neuritis terminated in September 1970. The argument continues that a separate and distinct "episode" of optic neuritis occurred in April 1971, which Dr. Longfellow, the only doctor testifying who examined Mr. Zimlich after November 1970, was unable to relate to the industrial injury. The fallacy in this argument lies in the attempt to separate the "episodes" of optic neuritis into two distinct categories. The testimony does not support such a separation. First, the claimant himself testified that the progressive loss of his eyesight was a gradual one, all stemming from the incident of rust falling into his eye. Second, Dr. Longfellow's testimony is clear that while he was unable to relate the condition of optic neuritis to the industrial incident, Mr. Zimlich's optic neuritis was a continuing, unbroken condition. As Dr. Longfellow stated in relating Mr. Zimlich's history:

> "He was referred to a Dr. Thompson with a diagnosis of bilateral optic neuritis which apparently had improved under some therapy, and *regressed back* to poor vision in both eyes." (Emphasis added.)

On cross examination, Dr. Longfellow further testified:

"Q: . . . Would the eyes have regressed to 20/200 and 20/100 from what was it, November, until April, in your opinion?

"A: With optic neuritis, you can lose your 20/20 vision in one day to 20/200.

"Q: And let's assume, Doctor, that there was no optic neuritis prior to the 14th or 18th of July of 1970, and that shortly thereafter it was determined there was optic neuritis. That would account for his vision being as it is now, in your opinion, is that correct?

"A: You mean optic neuritis causing it?

"Q: Yes.

"A: Correct."

It is apparent that the optic neuritis diagnosed by Dr. Longfellow in April 1971 was the same optic neuritis found by Dr. Thompson in August 1970, the only difference being that Dr. Thompson was able to relate the condition to the industrial incident and Dr. Longfellow was not.

Under this state of the record, we find that the award of the Commission granting claimant's petition to reopen was supported by reasonable evidence.

Award affirmed.

EUBANK, P. J., and HAIRE, J., concur.